UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OWYHEE COUNTY, STATE OF IDAHO; GEM HIGHWAY DISTRICT, OWYHEE COUNTY; and THREE CREEK GOOD ROAD DISTRICT, OWYHEE COUNTY,<br><br>                Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                Defendant. | Case No. 1:21-cv-00070-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court is Defendant's second motion to dismiss. (Dkt. 24.) The motion is fully briefed and at issue. Having reviewed the entire record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the decisional process would not be significantly aided by oral argument, the motion will be decided on the record. Dist. Idaho L. Civ. Rule 7.1(d). For the reasons that follow, the Court will grant the motion to dismiss and will grant Plaintiffs' request for leave to amend.

**BACKGROUND**

This lawsuit concerns ninety-three rights-of-way that cross public lands in Owyhee County, Idaho. The public lands themselves are owned by the United States of America and managed by the United States Department of the Interior, Bureau of Land Management (BLM). Plaintiffs assert the rights-of-way are public roads in accordance with the Act of July 26, 1866, codified as 43 U.S.C. § 932, (commonly referred to as "R.S. 2477"), and the Idaho Road Validation process, Idaho Code Section 40-203A. (Dkt. 1, 16.)[1]

Plaintiffs are Owyhee County and two road districts located within Owyhee County – Gem Highway District and Three Creek Good Road District. (Dkt. 1.) The initial Complaint sought to "validate" and "declare the rights and other legal relations" of the ninety-three rights-of-way as public roads under R.S. 2477, and Idaho law pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, or, in the alternative, under the Quiet Title Act (QTA), 28 U.S.C. § 2409a. (Dkt. 1 at ¶ 4.) On January 5, 2022, the Court granted the United States' motion to dismiss. (Dkt. 18.) Claims One and Two brought pursuant to the Declaratory Judgment Act, were dismissed with prejudice for lack of subject matter jurisdiction. Claims Three, Four, Five, and Six were dismissed without

---

[1] In 1866, Congress passed R.S. 2477, which provides: "The right-of-way for the construction of highways over public lands, not reserved for public uses, is hereby granted." 43 U.S.C. § 932, 14 Stat. 253 (1886). It was enacted to assist in the development of the West by granting "rights of way for construction of highways over public lands to miners, farmers, ranchers, and homesteaders." Harry R. Bader, *Potential Legal Standards for Resolving the R.S. 2477 Right of Way Crisis*, 11 Pace Envtl. L. Rev. 485, 485 (1993). R.S. 2477 was repealed 110 years later by the Federal Land Policy Management Act of 1976 (FLPMA), § 706(a), Pub. L. No. 94-579, 90 Stat. 2793. Thus, there can be no new R.S. 2477 rights-of-way after 1976. However, all rights-of-way existing at the time of R.S. 2477's repeal in 1976, remain valid.

prejudice, as the Court found the allegations in the Complaint insufficient to establish the jurisdictional requirements of the QTA. (Dkt. 18.) Specifically, the Court found Plaintiffs had failed to sufficiently plead facts demonstrating the adverse right, title, or interest claimed by the United States to the rights-of-ways making up Claims Three, Four, Five, and Six. (Dkt. 18 at 11.) Plaintiffs were granted leave to file an amended complaint as to the QTA claims.

On February 1, 2022, Plaintiffs timely filed an Amended Complaint asserting four claims for relief under the QTA, again seeking to validate that the ninety-three roads in question are public rights-of-way under R.S. 2477, to which Plaintiffs have the right and interest in maintaining. (Dkt. 21.) On March 18, 2022, the United States filed the second motion to dismiss presently before the Court. (Dkt. 24.) The United States seeks dismissal of the Amended Complaint in its entirety for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court finds as follows.

## STANDARD OF LAW

"Federal courts are courts of limited jurisdiction" and may only hear cases as authorized by Article III of the United States Constitution and statutes enacted by Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, federal courts cannot consider claims for which they lack subject matter jurisdiction. *See Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992).

The party invoking the Court's jurisdiction bears the burden of proving that the case is properly in federal court. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001); *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007) (The

party asserting a claim against the United States bears "the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress.").

Federal Rule of Civil Procedure 12(b)(1) governs challenges to subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Lack of sovereign immunity is a defense properly raised under Rule 12(b)(1). *Tobar v. United States*, 639 F.3d 1191, 1194 (9th Cir. 2011).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, Defendant presents a facial challenge to the Court's jurisdiction. (Dkt. 25 at 5.) In a facial attack, the challenging party asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

When considering a "facial" attack made pursuant to Rule 12(b)(1), a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).[2] However, it is improper to rule on a Rule 12(b)(1) motion when the "jurisdictional issue and the substantive issues . . . are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Safe Air for Everyone*,

---

[2] In contrast, a factual challenge attacks "the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A factual attack made pursuant to Rule 12(b)(1) may be accompanied by extrinsic evidence, *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989), and "the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill*, 594 F.2d at 733). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill*, 594 F.2d at 733 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

373 F.3d at 1040; *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) ("A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'") (quoting *Augustine*, 704 F.2d at 1077). In such a case, "the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077.

## ANALYSIS

On this motion, the United States argues the Amended Complaint fails to cure the deficiencies found in the original Complaint. (Dkt. 25.) Namely, that the allegations do not establish the conditions required to find a limited waiver of sovereign immunity under the QTA are present. Alternatively, the United States argues the QTA claims are barred by the statute of limitations. Plaintiffs oppose the motion, arguing the allegations in the Amended Complaint are sufficient to establish subject matter jurisdiction under the QTA and, further, the claims are timely filed within the statute of limitations. (Dkt. 27.)

### 1.    Quiet Title Act

The QTA is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property." *Alaska v. Babbitt*, 38 F.3d 1068, 1073 (9th Cir. 1994) (quoting *Block v. North Dakota*, 461 U.S. 273, 286 (1983)); *see also Tombstone, City of v. United States*, 2015 WL 11120851, at 9 (D. Ariz. March 12, 2015). The QTA provides a limited waiver of sovereign immunity in a civil action to adjudicate a disputed title to real property in which the United States claims an interest. 28 U.S.C. § 2409a(a) ("The United States may be named as a party defendant in a civil action under this

section to adjudicate a disputed title to real property in which the United States claims an interest . . . ."); 28 U.S.C. § 1346(f) (providing that district courts "shall have original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States"); *Alaska*, 38 F.3d at 1073 ("[W]hen the United States has an interest in the disputed property, the waiver of sovereign immunity must be found, if at all, within the QTA").

"[W]aivers of sovereign immunity are to be read narrowly and conditions on the waiver are to be 'strictly observed.'" *Kane County, Utah v. United States*, 772 F.3d 1205, 1211 (10th Cir. 2014) (*Kane*) (quoting *Block*, 461 U.S. at 287). When subject matter jurisdiction is challenged, the Court presumes lack of subject matter jurisdiction until the plaintiff proves otherwise. *See Kokkonen*, 511 U.S. at 377. Absent a waiver of sovereign immunity as provided by the QTA, Plaintiffs' claims challenging the titles or interests in land held by the United States are barred. *Mills v. United States*, 742 F.3d 400, 404 (9th Cir. 2014); *McGuire v. United States*, 550 F.3d 903, 910 (9th Cir. 2008).

"[T]wo conditions must exist before a district court can exercise jurisdiction over an action under the [QTA]: 1) the United States must claim an interest in the property at issue, and 2) there must be a disputed title to real property between the interests of the plaintiff and the United States." *Leisnoi v. United States (Leisnoi II)*, 267 F.3d 1019, 1023 (9th Cir. 2001) (discussing *Leisnoi, Inc. v. United States (Leisnoi I)*, 170 F.3d 1188, 1191 (9th Cir. 1999)). "If either condition is absent, the [QTA waiver] . . . does not apply and the district court lacks jurisdiction to entertain the action." *Leisnoi I*, 170 F.3d at 1191.

Further, the QTA requires that the complaint "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." 28 U.S.C. § 2409a(d); *see Leisnoi I*, 170 F.3d at1191 (recognizing sections 2409a(a) & (d) impose conditions upon the waiver of sovereign immunity). The "particularity" requirement in section 2409a(d) "necessitates a great deal of specificity." *McMaster v. United States*, 731 F.3d 881, 897-898 (9th Cir. 2013).

"In construing the scope of the QTA's waiver, [the Ninth Circuit has] read narrowly the requirement that the title at issue be 'disputed.'" *Mills*, 742 F.3d at 405. For title to be disputed under the QTA, the United States must have "adopted a position in conflict with a third party regarding that title." *Id.* Further, "to satisfy the 'disputed title' element of the QTA, a plaintiff must show that the United States has either expressly disputed title or taken action that implicitly disputes it." *Kane*, 772 F.3d at 1212; *see also Mills*, 742 F.3d at 405.

## 2.   Plaintiffs' R.S. 2477 Assertions[3]

On March 28, 1994, the Board of County Commissioners for Owyhee County submitted an Application of Assertion Right of Way to the BLM for seventy-one claimed rights-of-ways. (Dkt. 21 at ¶ 42.) Some, but not all, of the rights-of-way claimed in the 1994 Application are inclusive of the ninety-three rights-of-ways that are the subject of

---

[3] The Court's account of Plaintiffs' R.S. 2477 Assertions is based on the allegations contained in the Amended Complaint, which are presumed true for purposes of the facial challenge raised by the United States. Fed. R. Civ. P. 12(b)(1). Only the facts relevant to resolution of the motion to dismiss presently before the Court are included in this discussion.

the First, Second, Third, and Fourth Claims for relief alleged in the Amended Complaint

(collectively the "R.S. 2477 Assertions"). (Dkt. 21, Exs. B, C.)[4] The United States was

aware of the R.S. 2477 Assertions, but has not act to either approve or disapprove

Plaintiffs' claims of rights-of-way made in the R.S. 2477 Assertions. (Dkt. 21 at ¶¶ 44,

45, 54-80.)[5]

     Plaintiffs allege two material events arose after March 28, 1994, which put

Plaintiffs on notice of the United States' dispute to title of the R.S. 2477 Assertions. (Dkt.

21 at ¶ 46.) First, enactment of the Omnibus Public Land Management Act of 2009

(OPLMA), establishing certain wilderness areas in Owyhee County and prescribing that a

travel management plan (TMP) for motorized mechanized off-highway vehicle recreation

be prepared. (Dkt. 21 at ¶ 47.) Second, the OPLMA required BLM to complete a TMP

for the "Owyhee front" within one year of enactment, and complete a TMP for the

remainder of Owyhee County withing three years of enactment. (Dkt. 21 at ¶ 48.)

     Plaintiffs allege that when the BLM began the travel management planning

process in Owyhee County, the BLM and Owyhee County agreed to hold monthly

coordination meetings to discuss topics implicating public lands in Owyhee County.

(Dkt. 21 at ¶ 49.) During the coordination meetings for the first subregion, Wilson Creek,

Plaintiffs allege the BLM "agreed to consider and to assess Owyhee County's 'R.S. 2477

---

[4] For purposes of this motion, the Court will refer to the rights-of-way that are the subject of the claims in the Amended Complaint collectively as the "R.S. 2477 Assertions."

[5] There is one exception to this allegation. Plaintiffs contend the BLM granted R.S. 2477 status to certain of the claimed rights-of-way in a letter dated April 3, 1984. (Dkt. 21 at ¶¶ 33-38, 45.) Whether the 1984 letter constitutes a valid "grant" of R.S. 2477 status to certain of the rights-of-way is not at issue or decided on the motion presently before the Court.

assertions' within BLM's intended travel management planning processes." (Dkt. 21 at ¶¶ 49, 50.)

Further, Plaintiffs allege certain statements in the Wilson Creek subregion's Predecisional Environmental Assessment (EA) dated July 10, 2006, and a Notice of Decision dated January 31, 2007, demonstrated to Plaintiffs that the United States would acknowledge Owyhee County's R.S. 2477 Assertions and would continue to allow motorized travel upon such routes "until after Owyhee County holds hearings on the public road status of the routes per Idaho State statues." (Dkt. 21 at ¶ 51.)[6]

However, Plaintiffs allege the United States "reversed course in the travel management planning process after issuance of the Wilson Creek subregion's 'Notice of Decision,'" beginning with the Murphy subregion. (Dkt. 21 at ¶ 52.) According to Plaintiffs, the Murphy subregion travel management planning process was "materially

---

[6] Plaintiffs quote the scoping section of the Wilson Creek Predecisional EA dated July 10, 2006, stating:

> Maintaining public access on routes under RS-2477 assertions. The RS-2477 process is a provision of Federal law that enables local governments and individuals to assert a public right-of way on routes existing on Federal land prior to 1976. The purpose of an RS-2477 assertion is to preserve public access and use. Both Owyhee County and individual local residents have filed RS-2477 assertions on a variety routes in the Wilson Creek Subregion. They would like the environmental assessment to evaluate an alternative that provides for RS 2477 assertions remaining open to public access and motorized use. (See Map 2, RS-2477 assertions).

(Dkt. 21 at ¶ 51.) Plaintiffs further rely on proposed action alternative 2 of the Wilson Creek Predecisional EA wherein the BLM stated that the travel management system would "[p]rovide that public motorized travel would continue on all routes asserted under RS-2477." *Id*. Finally, Plaintiffs quote the Wilson Creek Notice of Decision stating "[a] clarification on management of asserted RS 2477 public highways has been added," adding that "[a]ny restrictions to current motorized uses would not be implemented until after Owyhee County holds hearings on the public road status of the routes per Idaho State statutes." *Id*.

different" from the Wilson Creek subregion process as evidenced by the scoping section

of the Murphy subregion EA dated April 17, 2009 stating:

> RS-2477 assertions. RS-2477 was a provision of Federal law that enabled
> local governments and individuals to establish a public highway right-of-
> way (rights-of-way) on federal land prior to 1976 when the provision was
> repealed. Because RS-2477 rights-of-ways were created through use rather
> than through an application and grant process, there remains uncertainty
> between the federal government and RS-2477 claimants on which routes
> have RS-2477 rights-of-way status. The purpose of an RS-2477 assertion is
> to preserve public access and use pending a future court determination.
> Both Owyhee County and individual local residents have filed RS-2477
> rights-of-way assertions on a variety of routes in the Murphy Subregion.
> (Map 8).

(Dkt. 21 at ¶ 54.) Further, the Murphy subregion travel management process did not

consider or assess any alternative recognizing Owyhee County's R.S. 2477 Assertions.

Instead, the Murphy subregion EA included a "Management Action" common to all

Alternatives stating: "[w]here court rulings validate RS-2477 assertions, the TMP route

designations would be modified to incorporate these findings." (Dkt. 21 at ¶ 54.)

Plaintiffs allege this "new and different notice" from the BLM demonstrated to Plaintiffs

that the United States disputed title to Owyhee County's R.S. 2477 Assertions and that

the United States would not recognize or authorize the R.S. 2477 Assertions, unless the

R.S. 2477 Assertions were validated in Federal Court under the Federal Quiet Title Act.

(Dkt. 21 at ¶ 54.)

The BLM issued a Decision Record for the Murphy subregion travel management

plan dated April 17, 2009. (Dkt. 21 at ¶ 55.) Owyhee County appealed the decision to the

United States Department of the Interior, Office of Hearings and Appeals, Board of Land

Appeals (IBLA). In its appeal, Owyhee County challenged the change in language used

by the BLM in the Murphy subregion travel management plan concerning Owyhee

County's R.S. 2477 Assertions as inconsistent with their agreement during the monthly

coordination meetings.

The IBLA issued a decision affirming the MSR-TMP, *Owyhee County, Idaho*, 179

IBLA 18 (2010) (IBLA Decision). (Dkt. 21 at ¶ 57.) Plaintiffs contend the IBLA

Decision confirms that the BLM disputed title to Owyhee County's R.S. 2477 Assertions

based on the following language:

> It is uncontroverted that the County's right-of-way assertions under R.S. 2477 were "acknowledged" pursuant to state law and that the County adopted Ordinance No. 08-03 to limit OHV use on these "County roads" in the SRMA, most of which were paved and maintained with state funding. … Since designating 90 miles of roads as "open" under the TMP conflicts with its R.S. 2477 assertions and ordinance closing certain of them to OHV use (45 miles), the County claims they should be excluded from the TMP. … BLM counters that these R.S. 2477 assertions are yet to be perfected and avers it has the authority to designate and manage roads in the SRMA unless and until the County's assertions are validated by an appropriate court. … As a matter of jurisdiction and authority over roads and travel management on Federal lands, we are persuaded BLM has both.
>
> A County right-of-way over roads on Federal lands exists and attaches after its R.S. 2477 assertions are validated under the Quiet Title Act. *See Wilderness Society vs. Kane County*, 581 F.3d 1198, 1218-19 (10th Cir. 2009); *SUWA v. BLM*, 425 F.3d at 755-58. Until validated, it has inchoate rights; thereafter, they will be recognized by BLM. BLM is not compelled by law or precedent to concede management authority over these roads to the County prior to a judicial validation of its assertions. *See Kane County v. Salazar*, 562 F.3d 1077, 1087-88 (10th Cir. 2009); EA at 17 ("Where court rulings validate RS-2477 assertions, the TMP route designations would be modified to incorporate these findings"). We find no error in BLM so addressing the County's assertions or including their affected roads in the TMP.

(Dkt. 21 at ¶ 57.) Plaintiffs also cite an IBLA Order dated October 7, 2009, denying

Owyhee County's petition for stay wherein IBLA noted the BLM's contention that

"absent some official determination that those [R.S. 2477] roads are, in fact, County roads, the County does not have jurisdiction over roads within the planning area and may not dictate how roads within the planning area may be used." (Dkt. 21 at ¶ 57.)

Thereafter, the BLM initiated travel management planning processes for the remainder of Owyhee County's subregions in the same manner taken in the Murphy subregion. In doing so, Plaintiffs contend the BLM demonstrated it would not consider or assess the Plaintiffs' R.S. 2477 Assertions unless the R.S. 2477 Assertions were validated in Federal Court under the QTA, contrary to the approach taken in the Wilson Creek subregion. (Dkt. 21 at ¶ 60.) The travel management processes for the five remaining subregions in Owyhee County have not been completed – Silver City, National Conservation Area (NCA), Grandview, Canyonlands East, Canyonlands West, and an unnamed area on the east side of the Bruneau River within Owyhee County. (Dkt. 21 at ¶ 60, Ex. E, F.) Owyhee County continues to participate in monthly coordination meetings with BLM during the travel management processes for the other subregions in the area. (Dkt. 21 at 61.)

3.    **Discussion**

On this motion, the United States argues the Amended Complaint does not satisfy the QTA's prerequisites for waiver of sovereign immunity because it fails to allege the United States disputes title to the ninety-three rights-of-way at issue with the required particularity. (Dkt. 25, 28.) Alternatively, the United States argues the QTA claims are barred by the statute of limitations.

Plaintiffs contend the allegations in the Amended Complaint are sufficient to

establish the United States disputes title as to each of the ninety-three rights-of-ways

identified in the claims, either expressly or implicitly, and that the United States claims

an interest in the roads in question that is adverse to Plaintiffs. (Dkt. 27.) Further,

Plaintiffs maintain their QTA claims are timely.

More specifically, Plaintiffs argue the Amended Complaint alleges facts showing

notice of an adverse claim by the United States "[b]eginning with the [Murphy subregion

TMP] and culminating in the official notice in the decision in *Owyhee County, Idaho*, 179

IBLA 18 (2010), [wherein] the [United States] took and maintained thereafter a disputed

and claimed position against the Plaintiffs as to the [United States'] interest in the 'R.S.

2477 Assertions,' inclusive of the ninety-three (93) roads in question in the Amended

Complaint, both *inside and outside*, the [Murphy subregion] TMP." (Dkt. 27 at 14)

(emphasis in original.) Plaintiffs list seven actions and statements by the United States,

through the BLM, which Plaintiffs claim demonstrate the United States disputed title to

the subject property. (Dkt. 27 at 15-16.) The Court will discuss below each of the seven

bases, with some being combined that raise related concepts and analysis.

### a.      Requiring Validation of the R.S. 2477 Assertions

First, Plaintiffs argue statements in the Murphy subregion EA requiring Plaintiffs

to validate the R.S. 2477 Assertions before the United States will recognize the roads as

R.S. 2477 rights-of-way establishes disputed title. (Dkt. 27 at 15) (citing Dkt. 21 at ¶ 54.)

Plaintiffs' seventh basis similarly contends that "[a]t every turn" the BLM exercised its

authority over the R.S. 2477 Assertions and otherwise disputed titled as to the R.S. 2477

Assertions, unless Owyhee County validated the rights-of-way in court. (Dkt. 27 at 16)

(citing Dkt. 21 at ¶¶ 2, 46, 61.)[7] However, none of the statements and actions alleged by Plaintiffs demonstrate that the United States disputes title to the claimed rights-of-way, either expressly or implicitly.

The Murphy subregion EA explicitly acknowledges Plaintiffs' R.S. 2477 Assertions and the "uncertainty" concerning which routes have R.S. 2477 rights-of-way status, stating:

> [T]here remains uncertainty between the federal government and RS-2477 claimants on which routes have RS-2477 rights-of-way status. The purpose of an RS-2477 assertion is to preserve public access and use pending a future court determination. Both Owyhee County and individual local residents have filed RS-2477 rights-of-way assertions on a variety of routes in the Murphy Subregion. (Map 8).

(Dkt. 21 at ¶ 54.) Importantly, the Murphy subregion EA includes a Management Action common to all alternatives, stating: "[w]here court rulings validate RS-2477 assertions, the TMP route designations would be modified to incorporate these findings." (Dkt. 21 at ¶ 54.) Nothing in the above quoted language establishes that the United States expressly or implicitly disputes title to the R.S. 2477 Assertions.

Instead, the Murphy subregion EA indicates that the BLM explicitly recognizes Plaintiffs' R.S. 2477 Assertions, notes the uncertainty concerning which routes possess R.S. 2477 rights-of-way status, and allows for modification to the TMP route designations if and when any of the R.S. 2477 Assertions are validated by a court. That Plaintiffs must validate their R.S. 2477 Assertions before the BLM will recognized

---

[7] The Court addresses the allegations contained in Paragraphs 2, 46, and 61 of the Amended Complaint more specifically in the sections that follow.

certain routes as R.S. 2477 rights-of-ways does not establish a disputed title. *Kane*, 772

F.3d at 1213-1214 (holding the United States' refusal to admit or deny allegations of a

claimed interest at the pleading stage cannot alone suffice to show a "disputed title"

under the QTA) (discussing *Alaska*, 201 F.3d at 1162-1165).

While the BLM possesses the authority to informally determine the validity of

R.S. 2477 rights of way for its own purposes, "nothing in federal law requires the BLM

to do so." *Kane County, Utah v. Salazar*, 562 F.3d 1077, 1087 (10th Cir. 2009) (*Kane*

*County*) (concluding BLM was under no obligation to resolve title to R.S. 2477 roads or

even informally assess R.S. 2477 roads, before issuing its management plan). Indeed,

"'the BLM lacks primary jurisdiction' to conclusively adjudicate R.S. 2477 claims." *Id*.

at 1086 (quoting *Southern Utah Wilderness Alliance v. Bureau of Land Management, et*

*al.*, 425 F.3d at 757 (10th Cir. 2005) (*SUWA*)); *see also Mills*, 742 F.3d at 405

(recognizing the United States' argument that the BLM "lack[s] the authority to make a

determination as to the existence of an R.S. 2477" right-of-way.).

Moreover, third parties may not judicially compel the BLM to "initiate such

internal decision-making," as Plaintiffs seek to do here. *See e.g., Williams v. Bankert*, No.

1:05CV503DAK, 2007 WL 3053293, at * 6 (D. Utah Oct. 18, 2007) (holding "[n]either

FLPMA nor any other statute imposes a duty on the BLM to determine the validity of

R.S. 2477 right-of-way claims as part of the process of preparing the Travel Plan.").

At most, the Murphy subregion EA demonstrates the existence of an ambiguity

concerning the status of the routes that are the subject of Plaintiffs' R.S. 2477 Assertions.

That, however, is insufficient to constitute a disputed titled under the QTA where, as

here, the BLM expressly recognized the R.S. 2477 Assertions, declined to adjudicate the claimed rights-of-ways, and allowed for modification to incorporate court rulings validating the R.S. 2477 Assertions. *Kane*, 772 F.3d at 1212-1213 ("[A]ctions of the United States that merely produce some ambiguity regarding a plaintiff's tile are insufficient to constitute 'disputed title.'").

      **b.**    **Management Authority Over the Rights-of-Way**

The second and third bases claimed by Plaintiffs to support a dispute of title by the United States is the BLM's retention of management authority and refusal to transfer management of the routes to Plaintiffs until the R.S. 2477 Assertions are validated. (Dkt. 27 at 15.) The Court finds otherwise.

Plaintiffs rely on certain statements contained in the IBLA Decision and an IBLA Order issued during the administrative appeal as evidence of the United States' claim of title and of disputed title to the rights-of-way. (Dkt. 27 at 15) (citing Dkt. 21 at ¶¶ 56, 57.) Some of the statements were arguments made by Owyhee County. However, Owyhee County's arguments cannot be imputed to establish the United States claimed or disputed title to the rights-of-way. (Dkt. 27 at 15.)

The other statements were arguments made by the BLM during the administrative appeal and the IBLA's findings affirming the BLM's decision, neither of which demonstrate the United States asserted an adverse claim of title or disputed title. Instead, the BLM's arguments and the IBLA's Decision both maintained that until the R.S. 2477 Assertions were validated by a court, the BLM is not compelled to conceded management authority of the roads. (Dkt. 21 at ¶ 57.) Requiring court validation of the R.S. 2477

Assertions before the BLM would cede management authority of the claimed rights-of-way to Plaintiffs, fails to establish title is disputed.

As discussed above, the BLM's refusal to resolve the status of Plaintiffs' R.S. 2477 Assertions during the travel management planning process does not constitute an adverse claim by the United States or disputed title under the QTA. *See Kane*, 772 F.3d at 1212-14 (discussing *Alaska*, 201 F.3d at 1163-65); *Kane County*, 562 F.3d at 1087. Likewise, the BLM's decision to exercise management authority over the claimed rights-of-way in the travel management plan areas until they are validated as R.S. 2477 roads by a court fails to establish the existence of an adverse claim of title or disputed title under the QTA. *See Williams*, 2007 WL 3053293, at *6 ("[I]n developing the Travel Plan, the BLM was entitled to…only recognize those R.S. 2477 rights-of-way for which claimants had previously carried their evidentiary burden."). The BLM was under no obligation to resolve the R.S. 2477 status of the claimed rights-of-way before issuing its travel management plan. *Kane County*, 562 F.3d at 1087.

The new allegations contained in the Amended Complaint concerning the BLM's maintenance and management authority of the roads are insufficient to show the BLM asserted a claim to the rights-of-way that is adverse to Plaintiffs or a disputed title. (Dkt. 21.) These new allegations are attached to each of the rights-of-way at issue, and are general, boilerplate restatements of the premise underlying Plaintiffs' claims for all ninety-three of the rights-of-way -- that the BLM's refusal to recognize or cede authority over the roads to Plaintiffs establishes a disputed title. Because that premise fails to establish the requirements for invoking the waiver of sovereign immunity under the QTA

for the reasons discussed in this Order, the new allegations restating the same fail to cure the jurisdictional deficiencies in the pleading.

### c.      Change in the Travel Management Planning Process

Plaintiffs' fourth basis in support of their argument that the United States disputed title is the change in the BLM's travel management planning process. (Dkt. 27 at 15.) Beginning with the Murphy subregion and continuing thereafter, Plaintiffs contend the BLM refused to consider or assess the R.S. 2477 Assertions as it had done previously in the Wilson Creek subregion. (Dkt. 27 at 15) (citing Dkt. 21 at ¶ 60.) Plaintiffs argue this material change in the BLM's travel management planning procedure "demonstrated to Plaintiffs" that the United States, through the BLM, disputed title as to Owyhee County's R.S. 2477 Assertions and that the United States would not recognize the R.S. 2477 Assertions unless and until they were validated by a court under the QTA. (Dkt. 21 at ¶ 54.)

Taking the allegations as true for purposes of this motion, the BLM changed its travel management planning process with regard to the claimed rights-of-way following the Wilson Creek subregion TMP. (Dkt. 21 at ¶¶ 51, 54.)[8] In the Murphy subregion travel management planning process, the BLM no longer agreed that the R.S. 2477 Assertions

---

[8] In the Wilson Creek subregion travel planning process the BLM: acknowledged Owyhee County's claimed rights-of-way; evaluated an alternative allowing the R.S. 2477 Assertions to remain open to public access and motorize use; and allowed motorized travel to continue until after Owyhee County pursued public road status under Idaho law. (Dkt. 21 at ¶ 51.) In contrast, in the Murphy subregion travel planning process the BLM acknowledged the R.S. 2477 Assertions, but stated "there remains uncertainty between the federal government and the R.S. 2477 claimants on which routes have R.S. 2477 rights-of-way status." (Dkt. 21 at ¶ 54.) Further, the BLM did not consider an alternative allowing the R.S. 2477 Assertions to remain open. Instead, the Murphy subregion EA included a management action common to all alternatives stating "[w]here court rulings validate RS-2477 assertions, the TMP route designation would be modified to incorporate these findings." (Dkt. 21 at ¶ 54.)

would remain open until after Owyhee County pursued hearings concerning the status of the routes under Idaho law. (Dkt. 21 at ¶ 60.) Instead, the BLM stated it would modify the route designations if and when court rulings validated the R.S. 2477 Assertions. (Dkt. 21 at ¶ 54.) The Court finds this change to the BLM's travel management planning process does not establish the existence of disputed title.

Under both procedures, the BLM acknowledged the R.S. 2477 Assertions and, critically, the BLM did not determine or resolve the status of the claimed rights-of-way under R.S. 2477. The BLM simply stated how it will manage the routes in the travel management areas. While Plaintiffs disagree with the BLM's change in procedure, preferring the approach taken in the Wilson Creek subregion, that disagreement does not create a dispute as to title. The BLM is not required to resolve or take a position concerning the R.S. 2477 status of the claimed rights-of-way. *Kane County*, 562 F.3d at 1087. As discussed above, the BLM's decision to manage the routes until a court validated the R.S. 2477 Assertions is insufficient to constitute a disputed title under the QTA. Thus, the BLM's change to the travel management planning process used in the Murphy subregion and subsequent subregion planning, does not establish that the United States disputes title to the claimed property.

### d.    Monthly Coordination Meetings

The fifth basis relied upon by Plaintiffs to support their disputed title argument is that the BLM took positions during their monthly coordination meetings demonstrating the United States disputed title. (Dkt. 27 at 15-16) (citing Dkt. 21 at ¶¶ 2, 46, 61.) Namely, that Plaintiffs could not maintain or otherwise exercise any management

authority over the R.S. 2477 Assertions without: 1) being subject to trespass by BLM for unauthorized use of public lands; 2) applying for and obtaining a separate rights-of-way from BLM under the Federal Land Policy and Management Act (FLPMA); and 3) seeking validation in Federal Court under the QTA. (Dkt. 27 at 15-16.) The Court finds these assertions fail to establish a disputed title under the QTA.

Even taking Plaintiffs' allegations as true, the positions taken by the BLM during monthly coordination meetings are substantially the same as the BLM's position for the TMPs beginning with the Murphy subregion and the IBLA's Decision. That is to say, the BLM maintained that it possessed the authority and jurisdiction to exercise management authority over the R.S. 2477 Assertions until Plaintiffs obtained official determination validating their claimed rights-of-ways. Again, that position does not give rise to a disputed title. *Kane*, 772 F.3d at 1213-1214. The possibility of a future claim or dispute of title – even a future threat of being subject to trespass -- fails to satisfy the jurisdictional requirement for a waiver of sovereign immunity under the QTA. *Alaska*, 201 F.3d at 1164-65 (holding that "whatever dispute there may be … ha[d] not yet occurred" because the United States reserved the right to assert its interest "at some time" in the future). Moreover, the existence of an ambiguity regarding the legal status of the roads does not constitute a disputed title for purposes of the QTA. *Kane*, 772 F.3d at 1213.

### e.    Material Dispute

Finally, Plaintiffs' sixth basis to support their argument of a disputed title is that the dispute is "material because it negated the right, title and interest for the Plaintiffs, as

applied within their respective jurisdictions, to maintain the several public rights-of-way as they cross the public lands owned by the USA consistent with Idaho law and R.S. 2477 without fee and without any additional authorization from the Defendant within the scope of the rights-of-way, as alleged herein. All of this specifically negated authority by Plaintiffs, within their respective jurisdictions, to grade roads with heavy equipment so as to maintain such roads without threat or fear of being subject to trespass from Defendant and to otherwise enhance, restrict, or condition use of such roads." (Dkt. 27 at 16) (citing Dkt. 21 at ¶ 46.)

Allegations that the dispute is material to Plaintiffs' interests fails to establish the existence of a dispute of title by the United States. The facts alleged to support this contention describe the impact felt by Plaintiffs as a result of not having validated the rights-of-ways at issue – mainly Plaintiffs' interest in maintaining and using the rights-of-way without threat or fear of being subject to a claim of trespass from the United States. (Dkt. 21 at ¶ 46.) The Court appreciates Plaintiffs' predicament. (Dkt. 21 at ¶ 2.) Nevertheless, Plaintiffs interest and desire to obtain validation of the R.S. 2477 Assertions does not create or constitute a disputed title for purposes of invoking the waiver of sovereign immunity in the QTA. Nor does the treat of a future possible claim or dispute of title satisfy the jurisdictional requirement for a waiver of sovereign immunity under the QTA. *Alaska*, 201 F.3d at 1164-65.

## 4.    Conclusion

Having thoroughly reviewed the pleading and the parties' submissions, and taking the factual allegations as true and construing them in the light most favorable to

Plaintiffs, the Court finds the Amended Complaint fails to plead facts demonstrating the existence of a disputed title as to the property at issue in Claims One, Two, Three, and Four of the Amended Complaint. *Leisnoi II*, 267 F.3d at 1023. The Amended Complaint details the ninety-three rights-of-way claimed by Plaintiffs and the circumstances under which Plaintiffs allege each of the rights-of-way were lawfully acquired. (Dkt. 21.) However, the Amended Complaint fails to show that the United States disputes title to the ninety-three claimed rights-of-way, either expressly or implicitly. Rather, taken as true, the allegations show the BLM has taken no position concerning the status of the claimed rights-of-way under R.S. 2477. "The QTA's waiver of sovereign immunity is therefore inapplicable to this case." *Mills*, 742 F.3d at 406. Absent such a waiver, the Court is without subject matter jurisdiction under the QTA.[9] *Id.* Accordingly, the Court will grant the motion and will dismiss without prejudice the claims in the Amended Complaint.

## 5.    Leave to Amend

Plaintiffs request leave to further amend their pleading in the event of dismissal. (Dkt. 27 at 19-20.) The Court has carefully considered the request for leave to amend and will grant Plaintiffs one final opportunity to cure any deficiencies in their pleading.[10]

---

[9] The Court's determination concerning subject matter jurisdiction is dispositive of the motion to dismiss. Therefore, the Court will not address the United States' alternative argument concerning the statute of limitations under the QTA at this time.

[10] Plaintiffs are not limited when amending their pleading. While Plaintiffs should address the jurisdictional deficiencies discussed herein to survive any future motion to dismiss, Plaintiffs are free to address other possible deficiencies raised by the United States. The Court makes no determination at this time concerning the validity or shortcomings of the pleadings with respect to any other basis that may be raised as grounds for dismissal.

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely give "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Five factors are frequently used to assess whether leave to amend should be granted: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether plaintiff has previously amended her complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)

An amendment request may be denied if it would produce undue delay in the litigation or be futile. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Futility alone can justify denying further leave to amend. *Johnson*, 356 F.3d at 1077. Additionally, "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (quotation omitted).

Here, Plaintiffs were previously afford the opportunity to file an amended complaint to cure the deficiencies in their QTA claims. However, the Amended Complaint continues to rely on the same statements and actions by the BLM to establish an adverse claim of title and the existence of a disputed title which the Court has determined are insufficient for the reasons discussed herein. The Court gave serious consideration to denying further leave to amend.

However, given the particular circumstances presented in this case and the record presently, the Court cannot conclude there are no facts that could be plead that would

demonstrate the existence of an adverse claim and disputed title for any one, some, or all of the ninety-three claimed rights-of-way. Accordingly, the Court finds further amendment may not be futile and would serve to further the interests of justice. Fed. R. Civ. P. 15(a)(2); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Moreover, no undue delay or prejudice will result from allowing further amendment given the early stage of the litigation. For these reasons, the request to amend the complaint will be granted. Plaintiffs may file a second amended complaint on or before June 17, 2022.

## <u>ORDER</u>

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Dkt. 24) is **GRANTED** as follows:

1. Plaintiffs' Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

2. Plaintiffs' request for leave to amend is **GRANTED**. Plaintiffs must file their second amended complaint on or before **June 17, 2022**.

DATED: May 19, 2022

Honorable Debora K. Grasham
United States Magistrate Judge