UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OWYHEE COUNTY, STATE OF IDAHO; GEM HIGHWAY DISTRICT, OWYHEE COUNTY; and THREE CREEK GOOD ROAD DISTRICT, OWYHEE COUNTY,<br><br>               Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>               Defendant. | Case No. 1:21-cv-00070-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant's third motion to dismiss. (Dkt. 48.) The motion is fully briefed and at issue. (Dkt. 49, 50.) A hearing was held on February 5, 2024. Having considered the parties' briefing and arguments, and the entire record, the Court will grant in part and deny in part the motion to dismiss for the reasons explained below.

## BACKGROUND

This lawsuit concerns ninety-three rights-of-way that cross public lands in Owyhee County, Idaho. The public lands themselves are owned by the United States of America and managed by the United States Department of the Interior, Bureau of Land Management (BLM). Plaintiffs assert the rights-of-way are public roads in accordance

with the Act of July 26, 1866, codified as 43 U.S.C. § 932, (commonly referred to as "R.S. 2477"), and Idaho law. (Dkt. 44 at ¶¶ 4, 5, 74, 77, 81-89; and Dkt. 49.)[1]

Plaintiffs are Owyhee County and two road districts located within Owyhee County – Gem Highway District and Three Creek Good Road District. (Dkt. 44.) The initial Complaint sought to "validate" and "declare the rights and other legal relations" of the ninety-three rights-of-way as public roads under R.S. 2477, and Idaho law pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, or, in the alternative, under the Quiet Title Act (QTA), 28 U.S.C. § 2409a. (Dkt. 1 at ¶ 4.) On January 5, 2022, the Court granted the United States' motion to dismiss. (Dkt. 18.) Claims One and Two brought pursuant to the Declaratory Judgment Act, were dismissed with prejudice for lack of subject matter jurisdiction. Claims Three, Four, Five, and Six were dismissed without prejudice, as the Court found the allegations in the Complaint insufficient to establish the jurisdictional requirements of the QTA. (Dkt. 18.) Specifically, the Court found Plaintiffs had failed to sufficiently plead facts demonstrating the adverse right, title, or interest claimed by the United States to the rights-of-way making up Claims Three, Four, Five, and Six. (Dkt. 18 at 11.) Plaintiffs were granted leave to file an amended complaint as to the QTA claims.

---

[1] In 1866, Congress passed R.S. 2477, which provides: "The right-of-way for the construction of highways over public lands, not reserved for public uses, is hereby granted." 43 U.S.C. § 932, 14 Stat. 253 (1886). It was enacted to assist in the development of the West by granting "rights of way for construction of highways over public lands to miners, farmers, ranchers, and homesteaders." Harry R. Bader, *Potential Legal Standards for Resolving the R.S. 2477 Right of Way Crisis*, 11 Pace Envtl. L. Rev. 485, 485 (1993). R.S. 2477 was repealed by the Federal Land Policy Management Act of 1976 (FLPMA), § 706(a), Pub. L. No. 94-579, 90 Stat. 2793. Thus, no new R.S. 2477 rights-of-way can be created after 1976. However, all rights-of-way existing at the time of R.S. 2477's repeal in 1976, remain valid.

On February 1, 2022, Plaintiffs filed an Amended Complaint asserting four claims for relief under the QTA. (Dkt. 21.) The Court granted Defendant's second motion to dismiss the Amended Complaint, finding the allegations failed to establish the existence of a disputed title under the QTA. (Dkt. 29.) Plaintiffs were granted further leave to amend. (Dkt. 29.) Thereafter, the Court granted in part Plaintiffs' request to conduct jurisdictional discovery and twice extended the time for Plaintiffs to file an amended complaint. (Dkt. 32, 38, 41.) Plaintiffs filed their Second Amended Complaint (SAC) on April 27, 2023, raising four claims under the QTA seeking to validate the ninety-three roads as public rights-of-way pursuant to R.S. 2477 and Idaho law ("R.S. 2477 Assertions").[2] (Dkt. 44 at ¶¶ 1-6; Dkt. 49 at 1.)

The United States filed a third motion to dismiss, which is presently before the Court. (Dkt. 48.) The United States seeks dismissal of the SAC in its entirety for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court finds as follows.

## STANDARD OF LAW

"Federal courts are courts of limited jurisdiction" and may only hear cases as authorized by Article III of the United States Constitution and statutes enacted by

---

[2] Consistent with prior Orders, the Court will refer to the rights-of-way that are the subject of the Plaintiffs' claims in the SAC collectively as the "R.S. 2477 Assertions." The term "R.S. 2477 Assertions" is used in other contexts of this case, both in the pleadings and the parties' briefing. In particular, the SAC uses the term "R.S. 2477 Assertions" in relation to Owyhee County's March 28, 1994 Application of Assertion Right of Way, which included some but not all of the ninety-three rights-of-way claimed in this lawsuit. (Dkt. 44 at ¶¶ 42, 43.) In addition, materials related to the travel management planning processes refer to "RS-2477 Assertions" in relation to Plaintiffs' rights-of-way assertions for various roads within a given subregion. (Dkt. 44 at ¶¶ 51, 54.) The varied use of the term "R.S. 2477 Assertions" makes identifying the rights-of-way, claims, and allegations applicable to the parties' arguments somewhat confusing. For that reason, the Court will cite to particular paragraphs in the SAC or use the particular name of a road when discussing an individual right-of-way.

Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, federal courts cannot consider claims for which they lack subject matter jurisdiction. An action can be brought against the United States only where the federal government waives its sovereign immunity. *Blackburn v. United States*, 100 F.3d 1426, 1429 (9th Cir. 1996). Absent a clear waiver of sovereign immunity, the Court is without subject matter jurisdiction. *Block v. N. Dakota ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 280 (1993). The party invoking the Court's jurisdiction bears the burden of proving the case is properly in federal court. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001); *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007) (The party asserting a claim against the United States bears "the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress.").

Federal Rule of Civil Procedure 12(b)(1) governs challenges to subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Lack of sovereign immunity is properly raised under Rule 12(b)(1). *Tobar v. United States*, 639 F.3d 1191, 1194 (9th Cir. 2011). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, Defendant presents a facial challenge to the Court's jurisdiction. (Dkt. 48 at 5.) In a facial attack, the challenging party asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When considering a facial attack made pursuant to Rule 12(b)(1), the court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff.

*Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

## ANALYSIS

On this motion, the United States seeks dismissal of all claims for lack of subject matter jurisdiction, arguing the SAC fails to satisfy the QTA's jurisdictional prerequisites for invoking a waiver of sovereign immunity because it does not allege facts establishing the United States disputes title to any of the ninety-three rights-of-way at issue with the required particularity. (Dkt. 48, 50.) Plaintiffs contest the legal standard relevant to the motion, arguing the disputed title requirement is not jurisdictional following the Supreme Court's decision in *Wilkins v. United States*, 598 U.S. 152 (2023). (Dkt. 49 at 8-11.) As to the merits, Plaintiffs contend the allegations in the SAC allege a sufficient basis to evidence a disputed title as to all of the claimed rights-of-way. (Dkt. 49.)

The Court will first address the applicable legal standard, and will then discuss the merits of the motion.

## 1.    Legal Standard

The QTA is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property." *Alaska v. Babbitt*, 38 F.3d 1068, 1073 (9th Cir. 1994) (quoting *Block*, 461 U.S. at 286); *see also Tombstone, City of v. United States*, 2015 WL 11120851, at *9 (D. Ariz. March 12, 2015). The QTA provides a limited waiver of sovereign immunity in a civil action to adjudicate a disputed title to real property in which the United States claims an interest. 28 U.S.C. § 2409a(a) ("The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest . . . ."); 28

U.S.C. § 1346(f) (providing that district courts "shall have original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States"); *Alaska*, 38 F.3d at 1073 ("[W]hen the United States has an interest in the disputed property, the waiver of sovereign immunity must be found, if at all, within the QTA").

"[W]aivers of sovereign immunity are to be read narrowly and conditions on the waiver are to be 'strictly observed.'" *Kane County, Utah v. United States*, 772 F.3d 1205, 1211 (10th Cir. 2014) (*Kane*) (quoting *Block*, 461 U.S. at 287) *abrogated on other grounds by Wilkins*, 598 U.S. at 156. Absent a waiver of sovereign immunity as provided by the QTA, claims challenging the titles or interests in land held by the United States are barred. *Mills v. United States*, 742 F.3d 400, 404 (9th Cir. 2014); *McGuire v. United States*, 550 F.3d 903, 910 (9th Cir. 2008).

"[T]wo conditions must exist before a district court can exercise jurisdiction over an action under the [QTA]: 1) the United States must claim an interest in the property at issue, and 2) there must be a disputed title to real property between the interests of the plaintiff and the United States." *Leisnoi, Inc. v. United States (Leisnoi II)*, 267 F.3d 1019, 1023 (9th Cir. 2001) (discussing *Leisnoi, Inc. v. United States (Leisnoi I)*, 170 F.3d 1188, 1191 (9th Cir. 1999)). "If either condition is absent, the [QTA waiver of sovereign immunity] . . . does not apply and the district court lacks jurisdiction to entertain the action." *Leisnoi I*, 170 F.3d at 1191. Further, the QTA requires that the complaint "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or

interest claimed by the United States." 28 U.S.C. § 2409a(d); *see Leisnoi I*, 170 F.3d at 1191 (recognizing sections 2409a(a) & (d) impose conditions upon the waiver of sovereign immunity). The "particularity" requirement in section 2409a(d) "necessitates a great deal of specificity." *McMaster v. United States*, 731 F.3d 881, 897-898 (9th Cir. 2013).

Here, Plaintiffs contend that under *Wilkins*, the disputed title element of the QTA is a procedural requirement - not jurisdictional - and, therefore, dismissal under Rule 12(b)(1) does not apply. (Dkt. 49 at 7-11.) Instead, Plaintiffs maintain the SAC satisfies Rule 8's general notice pleading requirements and argue the standard applicable to Defendant's motion is to assess the sufficiency of the complaint under Rule 12(b)(6). (Dkt. 49 at 3-4, 7-8, 10-11.) Alternatively, if the Court finds the disputed title element is jurisdictional, Plaintiffs request that the Court reconsider its prior decision under Rule 59(e) in light of the decision in *Wilkins*. (Dkt. 49 at 9, n. 3.) Defendant disagrees, arguing the disputed title element of the QTA remains a jurisdictional prerequisite to a QTA claim post-*Wilkins*. (Dkt. 50 at 7-19.)

The lone issue presented in *Wilkins* was whether the QTA's twelve year statute of limitations, 28 U.S.C. § 2409a(g), was a jurisdictional bar or a nonjurisdictional claims-processing rule. *Wilkins*, 598 U.S. at 155. The Supreme Court found it to be the latter, but did not address the propriety of the underlying dispute regarding the scope of the easement. *Id.* at 165. Contrary to Plaintiffs' suggestion here, the Supreme Court's decision in *Wilkins* does not abrogate the prior caselaw limiting adjudications under the QTA to cases where the United States claims an interest in the property and there is a

disputed title, 28 U.S.C. § 2409a(a). *See Alaska v. United States*, 2023 WL 5724945, at

*3 (D. Alaska Sept. 5, 2023) (applying Rule 12(b)(1) to dismiss a QTA claim where

plaintiff failed to plead the jurisdictional requirements that the United States claimed an

interest in or disputed title to the subject property post-*Wilkins*); *Whipple v. Barron*, 2023

WL 3740102, at *2 (D. Colo. May 31, 2023) (same); *Worick Land Holdings, LLC v.

Scott Cnty. Rural Land Mngmnt. Bd, Inc.*, 2023 WL 3910246, at *2 (E.D. Ky. June 8,

2023).

Instead, in the Ninth Circuit, which is binding on this Court, "a plaintiff bringing a

quiet title action against the United States must allege in its complaint the following two

conditions in order to establish that the United States has waived its sovereign immunity

and that a federal district court has subject matter jurisdiction: (1) the United States

claims an interest in the property at issue, and (2) there is a disputed title to real

property." *Alaska*, 2023 WL 5724945, at *3 n. 27, 30 (citing *Leisnoi I*, 170 F.3d at 1191

and *Leisnoi II*, 267 F.3d at 1023).[3] "If either condition is absent, the [QTA waiver of

sovereign immunity] . . . does not apply and the district court lacks jurisdiction to

entertain the action." *Leisnoi I*, 170 F.3d at 1191.

Based on the foregoing, the Court finds the disputed title requirement of the QTA

---

[3] Plaintiffs request that the Court order supplemental briefing on this issue as was done in *Alaska v. United States*, Case No. 3:22-cv-00103-SLG (D. Alaska May 15, 2023). (Dkt. 49 at 20, Att. 1.) However, the court in *Alaska v. United States* has since issued the decision cited above concluding the two requirements to invoke the QTA's waiver of sovereign immunity are jurisdictional and, therefore, applied the standard under Rule 12(b)(1), which is directly at odds with Plaintiffs' argument here. *Alaska*, 2023 WL 5724945, at *3. Based on the reasoning and cases cited above, the Court finds supplemental briefing is unnecessary because the standard applicable to the motion is clear and the parties have addressed the issue in their existing briefing. Additionally, because Defendant's motion is properly brought under Rule 12(b)(1), no supplemental briefing concerning Rule 12(b)(6) is required. (Dkt. 49 at 11, n. 4.)

is jurisdictional. *Leisnoi II*, 267 F.3d at 1023. Accordingly, Plaintiffs' request for reconsideration is denied. The Court will apply the standard applicable to facial challenges of the Court's subject matter jurisdiction brought under Rule 12(b)(1), as stated above.

## 2.    Discussion

Defendant moves to dismiss all of Plaintiffs' claims, arguing SAC fails to allege facts sufficient to show a disputed title exists as required under the QTA, 28 U.S.C. § 2409a(a). (Dkt. 48, 50.) Plaintiffs maintain the allegations in their prior pleadings were sufficient to show a disputed title. (Dkt. 49 at 5-6.) Nevertheless, Plaintiffs contend they have added allegations to the SAC that further demonstrate the United States expressly disputed title and took actions implicitly disputing title as to all of the ninety-three claimed rights-of-way and, alternatively, as to ten specific roads. (Dkt. 49 at 3, 19.)

In particular, Plaintiffs point to the new allegations contained in paragraphs 54, 57, 57A, 65, 170, 244, and 251 of the SAC. (Dkt. 49 at 3, 6.) Plaintiffs argue the allegations in the SAC establish that Defendant disputes title to their R.S. 2477 Assertions based on 1) the BLM's exercise of regulatory management and control of the rights-of-way; and 2) the BLM's imposition of conditions and restrictions on the use and maintenance of the rights-of-way, both of which Plaintiffs assert are contrary to their rights and interests. (Dkt. 44, 49.)

The Court has expended considerable time and resources carefully reviewing the entire record in this matter. Having done so, the Court finds the legal underpinnings articulated in its prior decisions remain correct. (Dkt. 18, 29.) However, the new

allegations in the SAC, combined with the allegations contained in the prior pleadings, demonstrate a disputed title as to nine of the rights-of-way claimed by Plaintiffs. Namely, Bachman Gate Road (1); Oreana Loop Road (aka Browns Creek Road) (12); Rabbit Creek Road (15); Reynolds Creek Road (16); Short Cut Road (20); Silver City Road (21); Mud Flat Road (11); South Mountain Road (aka Road 6a) (22); and Triangle Road (23). (Dkt 44, 49.) Accordingly, the Court will deny Defendant's motion to dismiss as to the nine roads listed, but will grant dismissal without prejudice as to the remaining eighty-four roads for the reasons explained below.

### A.      Legal Underpinnings

#### 1.      Disputed Title

As stated above, "[T]wo conditions must exist before a district court can exercise jurisdiction over an action under the [QTA]: (1) the United States must claim an interest in the property at issue, and (2) there must be a disputed title to real property between the interests of the plaintiff and the United States." *Leisnoi II*, 267 F.3d at 1023. "In construing the scope of the QTA's waiver, [the Ninth Circuit has] read narrowly the requirement that the title at issue be 'disputed.'" *Mills*, 742 F.3d at 405.

The parties disagree over whether the allegations in the SAC demonstrate a disputed title sufficient to invoke the Court's jurisdiction under the QTA. As a threshold matter, Plaintiffs contest whether denial of access or force is necessary to establish a dispute of title. (Dkt. 49 at 7, 15-17.) Instead, Plaintiffs contend the BLM's denial or conditioning the use of the roads contrary to Plaintiffs' interests is sufficient to show a disputed title. Defendant maintains the BLM's exercise of management authority,

requiring authorization of the rights-of-way or imposing conditions before allowing

Plaintiffs to use or maintain the roads, and declining to cede management do not establish

a disputed title. (Dkt. 50 at 3-7.) Further, Defendant highlights that the QTA's disputed

title requirement is read narrowly and must be alleged with particularity to show the

United States has adopted a position in conflict with a third party regarding title. (Dkt. 50

at 2, 6.)

The caselaw on this point is well-established. For title to be disputed under the

QTA, the United States must have "adopted a position in conflict with a third party

regarding that title." *Mills*, 742 F.3d at 405. "[T]o satisfy the 'disputed title' element of

the QTA, a plaintiff must show that the United States has either expressly disputed title or

taken action that implicitly disputes it." *Kane*, 772 F.3d at 1212; *see also Mills*, 742 F.3d

at 405. While the QTA does not require the United States to place gates or signs

restricting access, or to physically remove individuals from traveling along before a

disputed title is found, there must be "more than notice of a mere possibility, in the

future, [that] a right-of-way may be limited or access denied." *N. Dakota ex rel.*

*Stenehjem v. United States*, 257 F.Supp.3d 1039, 1074 (D. N.D. 2017). "In construing the

scope of the QTA's waiver [of sovereign immunity], [courts] have read narrowly the

requirement that the title at issue be 'disputed.'" *Mills*, 742 F.3d at 405.

Applying this standard here, the Court finds the allegations in the SAC fail to

demonstrate that the United States disputes title as to all but nine of the claimed rights-of-

way for the reasons explained below.

### 2.    BLM's Regulation, Management, and Control of the Roads

Defendant argues no disputed title has been shown based on allegations that the BLM regulated, managed, and exercised control over the roads, for the same reasons stated in the prior decisions. (Dkt. 48, 50.) Plaintiffs dispute the extent of the BLM's regulatory authority over R.S. 2477 roads, and, in any event, argue the BLM's exercise of its "limited regulatory authority" over the roads evidences a disputed title. (Dkt. 49 at 13-17.) Plaintiffs maintain that the BLM's exercise of dominion and control over the use and maintenance of the roads infringes upon Plaintiffs' own rights and interests to use and maintain the roads arising under Idaho law and R.S. 2477. (Dkt. 49 at 14-17.) Plaintiffs further argue disputed title is shown by the BLM requiring validation of Plaintiffs' claimed rights-of-way before allowing Plaintiffs to use and maintain the roads.

The Court previously rejected Plaintiffs' contentions that requiring authorization or validation of their R.S. 2477 Assertions and exercising management authority of the rights of way established disputed title. (Dkt. 29 at 13-19) (citing *Kane*, 772 F.3d at 1212-14 (discussing *Alaska v. United States*, 201 F.3d 1154, 1163-65 (9th Cir. 2000)); *Kane County, Utah v. Salazar*, 562 F.3d 1077, 1087 (10th Cir. 2009) (*Kane County*)). The Court similarly found that the BLM's decision to exercise management authority over the claimed rights-of-way in the travel management plan areas until they are validated as R.S. 2477 roads by a court fails to establish the existence of an adverse claim of title or disputed title under the QTA. (Dkt. 29 at 17) (citing *Williams v. Bankert*, No. 1:05CV503DAK, 2007 WL 3053293, at *6 (D. Utah Oct. 18, 2007) ("[I]n developing the Travel Plan, the BLM was entitled to…only recognize those R.S. 2477 rights-of-way for

which claimants had previously carried their evidentiary burden."). The Court concluded that the BLM was under no obligation to resolve the R.S. 2477 status of the claimed rights-of-way before issuing its travel management plan. (Dkt. 29 at 17) (citing *Kane County*, 562 F.3d at 1087); *Kane*, 772 F.3d at 1213-1214 (refusal to admit or deny allegations of a claimed interest cannot alone suffice to show a disputed title under the QTA, and mere ambiguity regarding title are insufficient to constitute disputed title.). In sum, the Court determined the BLM's exercise of maintenance and management authority over the roads and/or requirement that Plaintiffs validate their claimed rights-of-way, alone, failed to establish a disputed title.

Plaintiffs disagree with the Court's prior rulings in this regard and, specifically, with the conclusion that the BLM is without the authority to validate title interests and R.S. 2477 claims under the Federal Land Policy and Management Act (FLPMA), and argue the BLM's failure to validate or disclaim their rights-of-way constitutes a disputed title. (Dkt. 49 at 12, n. 5.) The Court finds otherwise. The section of the FLPMA relied on by Plaintiffs, 43 U.S.C. Section 1745(a), authorizes the BLM to issue a document of disclaimer of interest or interests in any lands. However, it does not require the BLM to do so nor does it grant the BLM the authority to adjudicate R.S. 2477 claims. Just the opposite, as stated in the prior decision, the BLM is not required to informally resolve title to R.S. 2477 roads before issuing a management plan and, further, the BLM lacks primary jurisdiction to adjudicate R.S. 2477 claims. (Dkt. 29 at 15) ("While the BLM possesses the authority to informally determine the validity of R.S. 2477 rights of way for its own purposes, nothing in federal law requires the BLM to do so. Indeed, the BLM

lacks primary jurisdiction to conclusively adjudicate R.S. 2477 claims. Moreover, third parties may not judicially compel the BLM to initiate such internal decision-making, as Plaintiffs seek to do here.") (citations and marks omitted). Thus, that the BLM has not validated or disclaimed Plaintiffs' R.S. 2477 Assertions, to the extent it could, does not constitute a disputed title for purposes of the QTA.

These legal underpinnings set forth in the prior orders remain correct and the Court will apply the same in analyzing below the claims and allegations made in the SAC.

### B.     Analysis of the Second Amended Complaint

### 1.     Plaintiffs have shown a Disputed Title as to Nine Roads

Plaintiffs identify ten particular roads which they argue a disputed title has been shown, as follows: Bachman Gate Road (1), Mud Flat Road (11), Oreana Loop Road (12), Rabbit Creek Road (15), Reynolds Creek Road (16), Short Cut Road (20), Silver City Road (21), South Mountain Road (22), Triangle Road (23), and Bates Creek Road (28). (Dkt. 49.)[4]

Nine of the ten roads identified by Plaintiffs share one common fact relevant to demonstrating a disputed title – they were all allegedly granted R.S. 2477 status by the BLM in 1984. (Dkt. 44 at ¶¶ 31-38.)[5] The underlying bases for that allegation are as

---

[4] Plaintiffs maintain they have demonstrated a disputed title as to all ninety-three roads and, alternatively, have made sufficiently particular allegations as to ten specific roads. (Dkt. 49.) The Court will address the ten specific roads in this section of the order, and will address the remaining eighty-three roads in the following section.

[5] For purposes of this motion, the Court considers the allegations in the SAC to be true and has construed them in the light most favorable to Plaintiffs. *Love*, 915 F.2d at 1245. However, the Court makes no determination at this time as to whether any of the Plaintiffs' R.S. 2477 Assertions have been or were in fact granted, recognized, or are

follows. Owyhee County submitted an Application for Transportation and Utility

Systems and Facilities on Federal Land dated March 28, 1984, identifying several roads

as R.S. 2477 rights-of-way. (Dkt. 44 at ¶ 31.) The application was submitted in

accordance with BLM regulations. (Dkt. 44 at ¶ 32.) The BLM recognized certain of the

rights-of-way identified in the application as evidenced by a letter dated April 3, 1984

(1984 Letter), wherein the BLM stated that "the official records are being noted to show

that the public roads indicated on your maps are now authorized by Right-of-Way I-

20724." (Dkt. 44 at ¶ 34.) The 1984 Letter went on to state: "[n]o formal right-of-way

grant from [sic] will be sent to you in accordance with new BLM right-of-way procedures

in regarding [sic] to Revised Statute 2477 roads." (Dkt. 44 at ¶ 34.)[6] Further, the roads

were identified by the BLM in right-of-way file IDI 020724 or right-of-way file I-20724

(collectively "IDI 020724/I-20724"). (Dkt. 44 at ¶¶ 36-38.) The nine roads included in

the 1984 Letter and BLM right-of-way file IDI 020724/I-20724 that are discussed in this

section of the decision are: Bachman Gate Road (1), Mud Flat Road (11), Oreana Loop

Road (12), Rabbit Creek Road (15), Reynolds Creek Road (16), Short Cut Road (20),

---

valid. Plaintiffs bear the burden of proving the merits of their claims. For purposes of this motion, the Court finds
only that the allegations in the SAC, if true, are sufficient to assert a disputed title for purposes of the QTA.

[6] Prior to 1976, establishment of R.S. 2477 rights-of-way were completely void of any administrative formalities.
*Southern Utah Wilderness Alliance v. Bureau of Land Management (SUWA)*, 425 F.3d 735, 741, 754 (10th Cir.
2005); *County of Shoshone of Idaho v. United States*, 912 F.Supp.2d 912, 926 (D. Idaho 2012). Here, Plaintiffs
allege their R.S. 2477 rights-of-way were established by positive acts of acceptance that occurred prior to 1976. *See
e.g.,* (Dkt. 44 at ¶¶ 100, 171, 177, 198, 206, 232, 240, 245, 252.) Whether the BLM's statements and actions in 1984
"granted" R.S. 2477 status to the roads and whether the claimed rights-of-way are otherwise valid, are matters
Plaintiffs must still prove to prevail on their QTA claims. For purposes of this motion, the Court finds the allegations
that the BLM recognized the claimed R.S. 2477 status in 1984, but now does not, are sufficient to show a disputed
title.

Silver City Road (21), South Mountain Road (22), and Triangle Road (23). (Dkt. 44 at ¶¶ 101, 172, 178, 199, 205, 233, 239, 246, 253.)

Despite recognizing these nine roads as R.S. 2477 rights-of-way in 1984, Plaintiffs allege the BLM now refuses to recognize the R.S. 2477 status of the roads – thus, creating a disputed title. The SAC identifies specific communications and actions by the BLM evidencing the BLM's change in position since 1984 as to these nine specific roads. The allegations demonstrate that the BLM now considers the roads R.S. 2477 status to be "uncertain" or "unresolved" and, therefore, the BLM has required Plaintiffs to obtain further authorization or validation before using and maintaining the roads. (Dkt. 44 at ¶¶ 54, 57, 57A.) The Court finds these allegations are sufficient to demonstrate the existence of a disputed title as to these nine roads for purposes of this motion.

While the BLM is not obligated to adjudicate or validate R.S. 2477 claims, where it previously recognized assertions of rights-of-way, as alleged here, the BLM's subsequent conflicting statements and actions refusing to acknowledge the roads' R.S. 2477 status constitutes a disputed title. *See e.g., Alaska*, 201 F.3d at 1162 (holding the BLM's change in position regarding a claim of ownership constitutes a disputed title under the QTA); *Kane*, 772 F.3d at 1212 ("Nor is the United States shielded by sovereign immunity where it previously disputed a plaintiff's title but does not do so presently.").[7]

---

[7] In *Alaska v. United States*, the BLM asserted a prior claim of ownership that two rivers in Alaska were not navigable at statehood and then later took positions inconsistent with its prior claim, including refusing to take any position. *Alaska*, 201 F.3d at 1161. Here, the facts are somewhat different because the BLM did not assert its own prior claim of ownership. Rather, the BLM previously recognized Plaintiffs' rights-of-way assertions and has since taken inconsistent positions that Plaintiffs' rights-of-way are uncertain and must be validated. The differing facts do not render the reasoning of the *Alaska* decision inapplicable here. As it was in *Alaska*, the Plaintiffs here reasonably relied on the BLM's prior recognition of the rights-of-way in 1984 for several years before the BLM changed its

The BLM's recognition of the rights-of-way in 1984 belies Defendant's arguments that the BLM takes no position or is "neutral" regarding the status of the roads included in the BLM's 1984 letter and rights-of-way file. Further, the particularized correspondence and actions by the BLM alleged here, if true, demonstrate that the BLM expressly and implicitly disputes Plaintiffs' claimed rights-of-way in contravention of the BLM's prior recognition of the same rights-of-way in 1984. (Dkt. 44 at ¶¶ 99, 170, 177, 197, 204, 231, 238, 244, 251.)

For instance, six of the roads alleged to be recognized as R.S. 2477 rights-of-way in 1984 are within the boundary of the Murphy TMP.[8] In the Environmental Assessment for the Murphy TMP, the BLM states that the status of Plaintiffs' claimed RS-2477 assertions are "uncertain" and the BLM's implementation of the Murphy TMP requires Plaintiffs to obtain authorization or judicial validation of the claimed R.S. 2477 roads before using or maintaining the roads. (Dkt. 44 at ¶¶ 54, 57, 57A.) For the other three roads alleged to be recognized as R.S. 2477 rights-of-way in 1984 – Mud Flat Road (11), South Mountain Road (22), and Triangle Road (23) – there is no travel management plan. Instead, the SAC alleges that specific correspondence from the BLM demonstrate the BLM does not recognize the 1984 rights-of-way status and requires Plaintiffs to obtain authorization before using or maintaining the roads. (Dkt. 44 at ¶¶ 65, 170, 244, 251.)

---

position, thereby creating a disputed title appropriate for resolution under the QTA.

[8] The roads located within the Murphy TMP area are: Bachman Gate Road (1), Oreana Loop Road (12), Rabbit Creek Road (15), Reynolds Creek Road (16), Short Cut Road (20), Silver City Road (21) and Bates Creek Road (28). However, Bates Creek Road (28) is not alleged to have been granted R.S. 2477 right-of-way status in 1984. For that reason, Bates Creek Road will be addressed separately.

The Court finds the allegations of the BLM's change in position concerning these nine particular roads in direct conflict with its prior recognition of the roads' R.S. 2477 status is sufficient to demonstrate the existence of a disputed title under the QTA. The BLM's inconsistent positions create a present, unambiguous, and certain dispute of title over these nine roads. That is to say, the disputed title found here is not a possible future claim of title, nor is it mere ambiguity or vagueness regarding the legal status of the nine roads. *Alaska*, 201 F.3d at 1164-65 (finding the threat or possibility of a future claim or dispute of title is not a disputed title under the QTA); *Kane*, 772 F.3d at 1213 (concluding ambiguity or vagueness regarding the legal status of a claim of title is not a disputed title under the QTA). Therefore, the motion to dismiss will be denied as to these nine roads.

The remaining road Plaintiffs identify with particularity, Bates Creek Road (28), was not among the rights-of-way recognized by the BLM in 1984. (Dkt. 44 at ¶¶ 287-291.) Consequently, there are no allegations that the BLM previously recognized Bates Creek Road as a R.S. 2477 rights-of-way, or that the BLM has since changed its position concerning the same. Therefore, unlike the nine roads discussed above, no disputed title as to Bates Creek Road is demonstrated by virtue of the BLM's prior designation of a right-of-way and later change in position.

Instead, Plaintiffs' assertion of a disputed title for Bates Creek Road are allegations regarding conflicting route use designations, and the BLM's exercise of management and authority over the road. (Dkt. 44 at ¶¶ 57, 287-291.) Bates Creek Road is within the Murphy TMP and has been designated by the BLM as open to two-wheel drive vehicles under the selected Alternative D. (Dkt. 44 at ¶ 289.) However, Owyhee

County has closed Bates Creek Road to all off-highway vehicle (OHV) use by way of County Ordinance No. 08-03. (Dkt. 44 at ¶ 57.) Thus, the BLM's adoption of Alternative D in the Murphy TMP opening the road to two-wheel drive vehicles conflicts with Owyhee County Ordinance No. 08-03 closing the road to OHV. (Dkt. 44 at ¶ 57.)

The Court finds the conflicting vehicle use designations for Bates Creek Road and the BLM's management of the road do not demonstrate the existence of a disputed title. "For a title to be disputed for purposes of the QTA, the United States must have adopted a position in conflict with a third party regarding that title." *Mills*, 742 F.3d at 405. The BLM's OHV use designation for Bates Creek Road constitutes agency regulation and management of the road, not an assertion of exclusive ownership adverse to Plaintiffs' rights-of-way claims. *Id.*; *McFarland v. Norton*, 425 F.3d 724, 727 (9th Cir. 2005) (distinguishing between reasonable regulatory actions that mildly interfere with use of an easement and regulations that deny the existence of an easement). Again, the BLM's regulation and management of the land, alone, does not constitute a position adverse to Plaintiffs' claim of a right-of-way to the road – particularly where, as here, Plaintiffs' claimed property interest is non-possessory and there is no denial of access. *McFarland*, 425 F.3d at 727 (holding mild interference with the use of an easement and the exercise of regulatory or supervisory actions pursuant to the government's own property interests, as opposed to those that deny the easement's existence, do not establish an adverse claim under the QTA).[9] "Were it not so, any regulation of a property interest would challenge

---

[9] In so stating, the Court does not find that denial of access is required to find a disputed title. Rather, the Court finds the fact that the BLM's route use designation opens the road to vehicle access is notable in evaluating whether a

ownership of the interest itself." *Id.*[10] For these reasons, the Court will grant the motion to dismiss as to Bates Creek Road.

### 2.    No Disputed Title Shown as to Remaining Roads

As to the remaining eighty-three roads, the Court finds Plaintiffs have failed to demonstrate the existence of a disputed title. Plaintiffs' allegations concerning the remaining roads generally point to the BLM's exercise of management and control over the roads; refusal to give authority over the use and maintenance of the roads to Plaintiffs; and failure to recognize, validate, or disclaim any interest in the roads. (Dkt. 44.) As found in the Court's prior decisions, those allegations fail to demonstrate that the BLM disputed title. (Dkt. 18, 29.)

Plaintiffs' allege several roads were included in the 1984 BLM rights-of-way file IDI 020724/I-20724, in addition to the nine roads discussed above. However, as to these several roads, there are no allegations of particular communications or actions by the BLM showing the BLM subsequently took a conflicting position regarding the status of the roads, aside from the general allegation that the BLM maintained its management authority over the roads. (Dkt. 44 at ¶¶ 106, 113, 120, 127, 134, 141, 148, 155, 162, 183, 190, 210, 217, 224, 258, 265, 283, 332, 339, 346, 353, 360, 367, 374, 381, 388, 395, 402,

---

disputed title exists.

[10] Plaintiffs correctly point out that *McFarland* involved the issue of whether the QTA's statute of limitations had been triggered. However, the standard for demonstrating a disputed title under the QTA is substantially the same as the requirement for initiating the QTA's statute of limitations. *Mills*, 742 F.3d at 405. Thus, the Court finds the cases addressing the accrual of a QTA cause of action for statute of limitations purposes instructive of the question of whether a disputed title exists. *See e.g., Sawtooth Mountain Ranch LLC v. United States*, 2020 WL 184576, at *6 (D. Idaho Jan. 13, 2020).

409, 416, 423, 429, 436, 443, 450, 457, 464, 471, 478, 485, 492, 499, 506, 513, 520, 527, 534, 546, 565.) Thus, unlike the nine roads discussed previously, there are no allegations showing the BLM expressly or implicitly disputes title to these several other roads by having changed its position since 1984.

Similarly, certain roads are alleged to have been included in Owyhee County's applications[11] for rights-of-way, and the BLM has not ceded management authority of the roads. (Dkt. 44 at ¶¶ 277, 301, 314, 559, 592, 598, 604, 610, 616, 636, 642, 655, 661, 667, 673, 679, 685, 691, 697, 703, 709, 715, 728.) Thus, both of these groups of roads – those contained in the 1984 rights-of-way file but with no subsequent change in position by BLM, and those included in Owyhee County's 1984 and 1994 applications – rest on general allegations that the BLM continues to regulate the roads and refuses to cede management authority of the roads to Plaintiffs.

Again, the BLM's exercise of management authority over the roads, alone, fails to establish the United States disputes Plaintiffs' claims of title as to those roads. *See Kane*, 772 F.3d at 1212-14; *Kane County*, 562 F.3d at 1087. Indeed, the BLM is obligated to protect the public lands over which the roads at issue here pass. *SUWA*, 425 F.3d at 747. To that end, the BLM is permitted to reasonably regulate R.S. 2477 rights-of-way interests. *See Grill v. United States*, 154 Fed. Cl. 802, 813 (2021) (R.S. 2477 roads "are nonetheless subject to the Forest Service regulation.") (quoting *Clouser v. Espy*, 42 F.3d

---

[11] Owyhee County submitted two applications asserting rights-of-way as to several roads. The first was dated March 28, 1984, and the second was dated March 28, 1994. (Dkt. 44 at ¶¶ 31-32, 40-43, 62-63.) The BLM acted on the 1984 application as discussed herein. (Dkt. 44 at ¶¶ 33-38.) The BLM has taken no action on the 1994 application. (Dkt. 44 at ¶¶ 44-45.)

1522, 1538 (9th Cir. 1994)); *SUWA*, 425 F.3d at 747; 43 U.S.C. §§ 1732(b), 1761(b).

Thus, unlike the nine roads discussed above, no disputed title has been shown as to the

other roads included in the 1984 BLM rights-of-way file or in Owyhee County's

applications for rights-of-way based on the BLM's exercise of management authority

over the roads and refusal to ceded management to Plaintiffs.

Plaintiffs further allege that several other roads were included in Owyhee

County's 1984 application, but were "advertently" omitted from the BLM's rights-of-

way file IDI 020724/I-20724. (Dkt. 44 at ¶¶ 296, 309, 554, 573, 580, 587, 624, 631, 650,

723) ("It is unknown the reason for the omission by the USA in not including this road in

right-of-way file IDI 020724, and it is apparent to the Plaintiffs that the omission was

advertent by the USA."). Such conclusory allegations, are insufficient to demonstrate the

existence of a disputed title under the QTA. Moreover, the omission of roads from the

BLM's 1984 rights-of-way file, alone, fails to establish a disputed title. *See e.g., Kane*,

772 F.3d at 1213 (finding the omission of roads from BLM's initial map created

ambiguity, but was insufficient to constitute a disputed of title under the QTA).

For these reasons, the Court will grant the motion to dismiss as to the eighty-three

remaining roads.

**3.    Conclusion**

Having thoroughly reviewed the pleading and the parties' submissions, and taking

the factual allegations as true and construing them in the light most favorable to

Plaintiffs, the Court finds the SAC fails to plead facts demonstrating the existence of a

disputed title as to all but nine of the rights-of-way claimed in the SAC. *Leisnoi II*, 267

F.3d at 1023.

The SAC describes the ninety-three rights-of-way claimed by Plaintiffs and the circumstances under which Plaintiffs allege each of the rights-of-way were lawfully acquired. (Dkt. 44.) The Court finds Plaintiffs have alleged facts which demonstrate the existence of a disputed title as to the following nine roads: Bachman Gate Road (1), Mud Flat Road (11), Oreana Loop Road (12), Rabbit Creek Road (15), Reynolds Creek Road (16), Short Cut Road (20), Silver City Road (21), South Mountain Road (22), and Triangle Road (23). (Dkt. 44.) For the reasons discussed above, the motion to dismiss will be denied as to these nine roads.

However, the SAC fails to allege facts establishing the United States disputes title as to the remaining eighty-four roads, either expressly or implicitly, for the reasons discussed herein. "The QTA's waiver of sovereign immunity is therefore inapplicable" to the remaining eighty-four roads. *Mills*, 742 F.3d at 406. Absent such a waiver, the Court is without subject matter jurisdiction to resolve Plaintiffs' claims as to the eighty-four roads. *Id.* The motion to dismiss will therefore be granted as to these roads.

As previously stated, the Court appreciates Plaintiffs' predicament and desire to validate their R.S. 2477 Assertions. (Dkt. 29.) However, that Plaintiffs have an interest in the claimed rights-of-way does not create or constitute a disputed title for purposes of invoking the waiver of sovereign immunity in the QTA. Nor does ambiguity or the threat of a future possible dispute of title as to the eighty-four roads satisfy the jurisdictional requirement for a waiver of sovereign immunity under the QTA. *Kane*, 772 F.3d at 1212; *Alaska*, 201 F.3d at 1164-65. Accordingly, the Court will grant the motion to dismiss as

to the remaining eighty-four roads.

Dismissal of the eighty-four claimed rights-of-way is for lack of subject matter jurisdiction and, therefore, is not an adjudication on the merits. Accordingly, the dismissal will be without prejudice. *Tijerino v. Stetson Desert Project, LLC*, 934 F.3d 968, 971 n. 2 (9th Cir. 2019) ("[I]n general, dismissal for lack of subject matter jurisdiction should be without prejudice."); *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) ("Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court.").

## 4.    Leave to Amend

Defendant seeks dismissal without leave to amend. (Dkt. 48, 50.) Plaintiffs argue any dismissal should allow for leave to amend the pleading. (Dkt. 49 at 19-20.) Having carefully considered the parties' arguments and the entire record, no further leave to amend will be granted for the reasons that follow.

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely give "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Five factors are used to assess whether leave to amend should be granted: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether plaintiff has previously amended her complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). An amendment request may be denied if it would produce undue delay in the litigation or be futile. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Futility alone can justify denying further leave to amend. *Johnson*, 356 F.3d at 1077. Additionally, "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (quotation omitted).

The record here does not warrant granting further leave to amend. *Metzler Inv. GMBH*, 540 F.3d at 1072. Plaintiffs have been afforded two prior attempts to amend their pleadings. To that end, Plaintiffs were granted two extensions of time and allowed to conduct jurisdictional discovery. (Dkt. 32, 38, 41.) In its prior Order, the Court cautioned that it had given serious consideration to denying further leave to amend and it was granting leave to amend a second time to allow "Plaintiffs one final opportunity to cure any deficiencies in their pleading." (Dkt. 29.) Nevertheless, the allegations in the SAC as to the eighty-four roads that will be dismissed, rest upon the same bases as the prior pleadings, which the Court has twice determined are insufficient. (Dkt. 18, 29.) Further, Plaintiffs do not contend that any facts presently exist which could be included in an amended pleading that would support their dismissed claims at this time. (Dkt. 49 at 20) (assuming additional facts "can and will arise in the future" to support Plaintiffs' claims). Accordingly, Plaintiffs fail to demonstrate that further amendment of their pleading at this time would not be futile. For these reasons, Plaintiffs' request for additional leave to amend will be denied.

## **ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Third Motion to Dismiss (Dkt. 48) is **GRANTED IN PART AND DENIED IN PART** as follows:

1) The Motion is **DENIED** as to the following rights-of-way alleged in Claim One: Bachman Gate Road (1), Mud Flat Road (11), Oreana Loop Road (12), Rabbit Creek Road (15), Reynolds Creek Road (16), Short Cut Road (20), Silver City Road (21), South Mountain Road (22), and Triangle Road (23).

2) The Motion is **GRANTED** as to the remaining rights-of-way alleged in Claims One, Two, Three, and Four, which are **DISMISSED WITHOUT PREJUDICE**.

3) Plaintiffs' request for leave to amend is **DENIED**.

4) On or before **April 12, 2024**, the Parties are directed to confer and either: 1) submit a Joint Litigation Plan and a Discovery Plan, or 2) submit a joint status report advising the Court as to how the parties intend to proceed in this matter.

DATED: February 9, 2024

Honorable Debora K. Grasham
United States Magistrate Judge